**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

TRACY J. HIRSCHY,

        Plaintiff,

        v.

FRANK BISIGNANO, Commissioner of the
Social Security Administration,

        Defendant.

CAUSE NO.: 1:25-CV-571-TLS

**OPINION AND ORDER**

The Plaintiff Tracy J. Hirschy seeks review of the final decision of the Commissioner of the Social Security Administration denying his application for disability insurance benefits. The Plaintiff argues that the Administrative Law Judge (ALJ) failed to consider whether his sleep apnea, which was diagnosed after the date last insured, was a medically determinable impairment. For the reasons below, the Court finds that reversal and remand for further proceedings is required.

**PROCEDURAL BACKGROUND**

On February 8, 2021, the Plaintiff filed an application for disability insurance benefits, alleging disability beginning on March 21, 2018, but later amended to June 18, 2020. AR 134, 682, 752, ECF No. 11. After the claim was denied initially and on reconsideration, the Plaintiff requested a hearing, which was held before the ALJ on April 14, 2022. AR 71. On November 23, 2022, the ALJ issued a written decision, finding the Plaintiff not disabled. AR 20–35. The Plaintiff sought review of the ALJ's decision by the Appeals Council, which denied review, and then the Plaintiff appealed the decision to the District Court, where the parties agreed to remand. AR 807–10, 814–34. On remand, a new ALJ held a hearing on December 18, 2024, and on May

21, 2025. AR 716, 718–19, 748. On June 26, 2025, the ALJ issued an unfavorable decision. AR 679–704. Because the case had been previously remanded by a federal court, the Plaintiff filed no exceptions with the Appeals Council, the Appeals Council did not assume jurisdiction, and the ALJ's decision is the final decision of the Commissioner. 20 C.F.R. § 404.984. On October 24, 2025, the Plaintiff filed his Complaint [ECF No. 1] in this Court, seeking judicial review under 42 U.S.C. § 405(g). The Plaintiff filed an opening brief, the Commissioner filed a response brief, and the Plaintiff filed a reply brief. ECF Nos. 14, 17, 18.

## THE ALJ'S DECISION

For purposes of disability insurance benefits, a claimant is "disabled" if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1505(a). To be found disabled, a claimant must have a severe physical or mental impairment that prevents his from doing not only his previous work, but also any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). An ALJ conducts a five-step inquiry to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885–86 (7th Cir. 2001); *see* 20 C.F.R. § 404.1512.

The first step is to determine whether the claimant is no longer engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i), (b). In this case, the ALJ found that the Plaintiff did not engage in substantial gainful activity during the period from June 18, 2020, through the date last insured of June 30, 2021. AR 685.

At step two, the ALJ determines whether the claimant has a "severe impairment." 20 C.F.R. § 404.1520(a)(4)(ii), (c). Here, the ALJ determined that the Plaintiff has the severe impairments of lumbar and cervical degenerative changes, status-post compression fracture deformity at the T12-L1 level, scoliosis; osteoarthritis of the first MTP joints of the bilateral feet; mild degenerative joint disease/degenerative changes of the left acromioclavicular (AC) joint; history of traumatic brain injury (TBI) and craniotomy with mild neurocognitive disorder and chronic post traumatic headaches due to TBI; generalized idiopathic epilepsy, not intractable; obesity; anxiety/generalized anxiety disorder; posttraumatic stress disorder (PTSD); and social anxiety. AR 685.

Step three requires the ALJ to consider whether the claimant's impairment(s) "meets or equals one of [the] listings [in appendix 1 to subpart P of part 404 of this chapter]." 20 C.F.R. § 404.1520(a)(4)(iii), (d). If a claimant's impairment(s), considered singly or in combination with other impairments, meets or equals a listed impairment, the claimant will be found disabled without considering age, education, and work experience. *Id*. § 404.1520(a)(4)(iii), (d). Here, the ALJ found that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listing, indicating that she considered Listings 1.15, 1.18, 11.00, 11.02, 11.04, 12.00, 12.02, 12.06, and 12.15. AR 686–90.

When a claimant's impairment(s) does not meet or equal a listing, the ALJ determines the claimant's "residual functional capacity" (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite [the individual's] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001); *see* 20 C.F.R. § 404.1520(e). In this case, the ALJ assessed the following RFC:

> After careful consideration of the entire record, the undersigned finds that, through the June 30, 2021 date last insured, the claimant had the residual functional capacity

to perform light work as defined in 20 CFR 404.1567(b) except as reduced by the following. During the period at issue, the claimant could occasionally reach overhead with the left nondominant upper extremity, he could frequently balance, he could occasionally climb ramps and stairs, stoop, kneel and crouch, but he could never crawl and could never climb ladders, ropes, scaffolds. He should have avoided all exposure to unguarded moving machinery, unprotected heights, and he should have avoided concentrated exposure to wet, slippery or uneven surfaces, extreme heat, extreme cold, and operation of foot controls with the bilateral lower extremities. In addition, the claimant should have avoided loud noise (as defined in the DOT) and bright or outdoor lighting. The claimant was able to understand, remember and carry out simple instructions and tasks, he could make judgments related to simple work related decisions, he could respond appropriately to occasional interactions with coworkers, supervisors and the general public, he could respond appropriately to usual work situations, and he could deal with routine changes in a routine work setting.

AR 690–91.

The ALJ then moves to step four and determines whether the claimant can do his past relevant work in light of the RFC. 20 C.F.R. § 404.1520(a)(4)(iv), (f). In this case, the ALJ found that the Plaintiff was unable to perform any past relevant work. AR 701.

If the claimant is unable to perform past relevant work, the ALJ considers at step five whether the claimant can "make an adjustment to other work" given the RFC and the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v), (g). Here, the ALJ found that the Plaintiff is not disabled because the Plaintiff can perform significant jobs in the national economy of routing clerk, marker, and router. AR 701–02.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). On review, a court considers whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. *See Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence.

*Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citations omitted). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)).

The court considers the entire administrative record but does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [the court's] own judgment for that of the Commissioner." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Nevertheless, the court conducts a "critical review of the evidence," and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez*, 336 F.3d at 539 (citations omitted); *see Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014) ("A decision that lacks adequate discussion of the issues will be remanded."). The ALJ is not required to address every piece of evidence or testimony presented, but the ALJ "has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (cleaned up). However, "if the Commissioner commits an error of law," remand is warranted "without regard to the volume of evidence in support of the factual findings." *White ex rel. Smith v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

**ANALYSIS**

In this appeal, the Plaintiff argues that the ALJ committed reversible error by failing to determine whether the Plaintiff's sleep apnea was a medically determinable impairment during the period of June 18, 2020, to June 30, 2021, which resulted in an RFC not supported by substantial evidence. The Court finds that remand is required for the ALJ to consider whether sleep apnea was a medically determinable impairment, and, if so, what effect it had on the RFC.

The Court begins with the record evidence related to the diagnosis of sleep apnea. At a follow up visit regarding headaches in November 2021—five months after the Plaintiff's date last insured, his general practitioner wrote: "Sleep apnea likely present; no previous test to rule out." AR 583. At a February 15, 2022 follow up visit for headaches, his doctor wrote: "He does state he does not sleep well and he has woken up many times gasping for breath. He is very confident that he has sleep apnea. Headaches could very well be tied to that. I am referring him to a sleep specialist. . . ." AR 577. The doctor commented: "[S]leep apnea symptoms have come about over the last 2–3 years with weight gain due to his debilitation." *Id.* The doctor also wrote: "Discussed the importance of getting sleep apnea treated. I believe this would dramatically decrease his anxiety and headaches. It would also help him sleep . . . ." AR 580.

At an August 17, 2022 office visit with his doctor, the Plaintiff presented with anxiety, reporting that he wakes up frequently, and his wife reported snoring. AR 1082. The doctor wrote: "We have been trying to get him evaluated for sleep apnea for some time. Insurance issues have prevented thus far. He does snore according to his wife. He wakes up without feeling rested. He is sleepy a lot during the day." *Id.*

Formal sleep apnea testing by a home sleep test was performed in September 2022; Dr. Rodriguez reviewed the test results, noting "severe obstructive sleep apnea-hypopnea wit[h]

significant [desaturations]." AR 1080. Dr. Rodriguez noted: "A home sleep test tends to underestimate presence and severity of sleep apnea." *Id.*

In an October 11, 2022 treatment note, his doctor wrote: "He has severe sleep apnea which was suspected for a long time. He did finally agree to a sleep study which found him to be severely apneic. He is following up with pulmonology." AR 1075. In a December 8, 2022 letter, his doctor explains that, since the Plaintiff was involved in a violent assault in 2010, he has had constant headaches. AR 13. The doctor also wrote: "Recently he has been evaluated for sleep apnea. Insurance limitations, postponed or canceled visits with Neurology, financial restrictions had interrupted that process. His most recent sleep study found a profound and severe sleep apnea which is finally able to be treated with a CPAP. He will be following up with me and pulmonology." *Id.* And, the doctor explained: "Current symptoms that have been present but are worsening since the [2010 assault] are examples of inattention: Leaving things on such as water running, losing items, irritability; these significantly limit any safety sensitive work including childcare, attempts at employment, even work around the house such as carrying heavy items are a concern." AR 14.

Here, the ALJ did not discuss sleep apnea or sleep issues in her decision and did not assess whether sleep apnea was a medically determinable impairment. AR 685–86. At step two of the disability determination process, the ALJ is required to identify all medically determinable impairments. 20 C.F.R. § 404.1520(a)(ii), (c); SSR 96-8p, 1996 WL 374184 (July 2, 1996). "[A] physical or mental impairment must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 404.1521. Signs and laboratory findings constitute objective medical evidence. *Id.* § 404.1502(f). Whether the medically determinable impairment is ultimately a severe impairment or a non-severe impairment is irrelevant because the ALJ must

consider both in assessing the RFC. *Id.* §404.1545(a)(2). The parties do not dispute that the Plaintiff's September 2022 home sleep study and Dr. Rodriguez's finding of severe sleep apnea fall under this category. *See id.* § 404.1502(g). The parties also do not dispute that Dr. Rodriguez is an acceptable medical source. *Id.* § 404.1502(a)(1). Thus, the findings from the sleep study appear to establish a medically determinable impairment of sleep apnea.

The Defendant responds that the ALJ did not err because the Plaintiff was not diagnosed with sleep apnea until over a year after his date last insured. However, "[a]n ALJ must consider evidence even if it post-dates the date last insured." *Gross v. Comm'r of Soc. Sec.*, No. 3:20-CV-351, 2021 WL 2821172, at *5 (N.D. Ind. July 7, 2021) (citing *Parker v. Astrue*, 597 F.3d 920, 925 (7th Cir. 2010)). A "retrospective diagnosis" may be considered if "corroborated by evidence contemporaneous with the eligible period." *Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998) (citations omitted); *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020) ("We typically expect an ALJ to consider an opinion by a doctor who treated the claimant after the relevant period if it offers a retrospective diagnosis that is corroborated by evidence produced during the relevant period." (citation omitted)). And "[r]etrospective diagnosis of an impairment, even if uncorroborated by contemporaneous medical records, but corroborated by lay evidence relating back to the claimed period of disability, can support a finding of past impairment." *Allord v. Barnhart*, 455 F.3d 818, 822 (7th Cir. 2006) (quoting *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 547 (3d Cir. 2003)); *see Halvorsen v. Heckler*, 743 F.2d 1221, 1225 (7th Cir. 1984) ("There can be no doubt that medical evidence from a time subsequent to a certain period is relevant to a determination of a claimant's condition during that period." (citation omitted)). Here, the Plaintiff's doctor indicated in February 2022 that his sleep apnea symptoms had come about over the prior two to three years with his weight gain, placing the onset of his sleep apnea symptoms

8

between February 2019 and February 2020, which is before the relevant period of June 18, 2020, to June 30, 2021.

Thus, the question is whether this administrative error was harmless. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) (finding the ALJ should have considered the state agency physicians' opinions but that the administrative error was harmless). The court "will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result." *Id.* (citing *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010)). The forward-looking question is whether the court "can . . . predict with great confidence what the result on remand will be." *Id.*

The Court finds it cannot predict with great confidence what the result on remand will be because, as argued by the Plaintiff, it is unclear how the ALJ will consider the effects of sleep apnea in combination with the Plaintiff's obesity and headaches in formulating the RFC as to limitations in concentration, persistence, and pace. The ALJ already found a moderate limitation in concentration, persistence, and pace but found the record did not reflect sustained issues of distractibility. AR 690. The ALJ also found the Plaintiff's subjective complaints not entirely consistent with the medical evidence of record. AR 694. But since the ALJ did not discuss any of the evidence of sleep issues or the diagnosis of sleep apnea, which appear to offer additional support for limitations related to concentration, persistence, and pace, the ALJ has not created a logical bridge between the evidence and this reasoning. *See Beardsley*, 758 F.3d at 837.

In support, the Plaintiff offers additional evidence of sleep issues throughout the relevant time period. At doctor visits in February and June 2019, the Plaintiff was positive for sleep disturbance in the review of systems. AR 1241, 1246. On an intake questionnaire for a neurologist in March 2019, the Plaintiff indicated his present symptoms were headache and

anxiety, and under the "sleep" category on "review of systems," he checked "excessive daytime sleepiness" and "trouble falling asleep" AR 488. The Defendant notes that the Plaintiff did not check "snorting or gasping for air" on the 2019 form. *Id.* On May 6, 2021, the Plaintiff was seen for shoulder pain and anxiety, reporting insomnia, which he related to his anxiety. AR 618. At the mental consultative exam the same month, the Plaintiff reported that worry often interfered with his ability to sleep and he presented with "significant difficulty concentrating." AR 537. In June 2021, the Plaintiff's chief complaint was insomnia, described as a chronic condition. AR 612. He testified that he "wake[s] up a lot, bad dreams mostly," AR 91, and, in his function report, he wrote that pain from his headaches prevented him from sleeping and that he has nightmares, AR 303. The Plaintiff's wife testified she noticed during the period at issue the Plaintiff was not sleeping well, that he had nightmares, and that he would get up in the middle of the night. AR 95. In her third party function report, she wrote: "Regularly can't sleep, restless, panic/nightmares." AR 295.

The ALJ did not discuss this evidence. In response, the Defendant suggests the cited sleep issues are not related to sleep apnea because they are related to anxiety and worry and are "not symptoms related to sleep apnea, such as snoring and waking up gasping for air," citing a Mayo Clinic website for a list of symptoms. Def. Br. 6, 6 n.2, ECF No. 17. But as the Plaintiff notes in reply, the Mayo Clinic's list of symptoms also includes morning headaches; "trouble staying asleep, known as insomnia"; "excessive daytime sleepiness, known as hypersomnia"; "trouble paying attention while awake"; and "irritability," all of which are found in the record. *See* Sleep Apnea, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/sleep-apnea/symptoms-causes/syc-20377631 (last visited May 19, 2026). And since the ALJ did not discuss the Plaintiff's sleep apnea diagnosis or any of the evidence of sleep issues during the

relevant period, the Court cannot know what the ALJ thought about this evidence or how it would affect the RFC in relation to concentration, persistence, and pace. *See Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012) ("Without any discussion of Arnett's dementia, this court has no idea what the ALJ thought about this evidence." (citations omitted)).

The Plaintiff also correctly notes that the aggregate effect of sleep apnea with his other ailments must be considered. *See Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) ("[T]he ALJ needed to consider the *aggregate* effect of this entire constellation of ailments— including those impairments that in isolation are not severe." (citations omitted)); *see Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020) ("[T]he ALJ must account for the 'totality of a claimant's limitations' in determining the proper RFC." (quoting *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018)). At the May 6, 2021 doctor's visit, the Plaintiff reported decreased concentration, AR 620; the MRFC opinion indicates the Plaintiff presented with a "significant difficulty concentrating," AR 537; and the agency psychologist noted moderate limitations in the ability to concentrate for extended periods and to maintain a consistent pace without rest periods, AR 140. "An ALJ doesn't need to address every piece of evidence but he or she can't ignore a line of evidence supporting disability." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (citation omitted).

In response, the Defendant notes the Plaintiff's failure to cite the evidence that, once he was using the CPAP machine in December 2022, he was noted as "doing fine," and in May 2023 it was noted he had a "huge improvement" with the CPAP machine, just six months after his diagnosis. However, the Defendant offers no law indicating how that subsequent treatment affects the disability determination during the relevant period. While the Plaintiff did not allege sleep apnea as a medically determinable impairment in the application, "the evidence should

have alerted the ALJ that [the Plaintiff] had another relevant impairment that could contribute to the cumulative effect of [his] other impairments." *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000). It is for the ALJ to assess the relevant evidence and explain how it factors in the RFC.

The Defendant also argues that no doctor offered an opinion indicating greater limitations. *See Dudley v. Berryhill*, 773 F. App'x 838, 843 (7th Cir. 2019) ("When no doctor's opinion indicates greater limitations than those found by the ALJ, there is no error." (citing *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004))). However, the sleep apnea diagnosis came after all the state agency reviews and consultative exams. *See Lambert v. Berryhill*, 896 F.3d 768, 776 (7th Cir. 2018) ("ALJs may not rely on outdated opinions of agency consultants 'if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion.'" (quoting *Moreno*, 882 F.3d at 728)).

Because it appears that sleep apnea may have been a medically determinable impairment and because the Court cannot predict with great confidence that the ALJ would make the same RFC determination when considering the sleep apnea, remand is required for further proceedings.

## CONCLUSION

For the above reasons, the Court GRANTS the relief sought in the Plaintiff's Brief [ECF No. 14] and REVERSES the decision of the Commissioner. The Court REMANDS this matter for further proceedings consistent with this Opinion.

SO ORDERED on May 21, 2026.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT

12